[No. 8935. Department One. February 28, 1911.]

THE STATE OF WASHINGTON, *on the Relation of the Olympia National Bank, Plaintiff,* v. JOHN G. LEWIS, *State Treasurer, Respondent.*[1]

STATES—WARRANTS—NEGOTIABILITY—INNOCENT HOLDERS. A state warrant issued in payment of fraudulent claims based upon false and forged vouchers is void, even in the hands of an innocent holder, since a state warrant is not negotiable in the sense of excluding inquiry into the legality of its issue or defenses thereto.

STATES—WARRANTS—AUDITING OF CLAIMS—ESTOPPEL. The fact that false claims against the state were audited and allowed by the board of military auditors, under Rem. & Bal. Code §§ 7222 and 7223, does not preclude defenses to warrants thereon in the hands of an innocent holder, there being nothing in such sections to indicate an intent to make the warrants negotiable.

STATES—STATE OFFICERS—TREASURER. It is the duty of the state treasurer to refuse payment of warrants illegally issued upon fraudulent claims.

MANDAMUS—STATE WARRANTS—PARTIAL VALIDITY—RELIEF. Upon mandamus to compel payment of a state warrant on claims part of which were illegal, the supreme court will not direct payment to the extent of the valid claims, the state treasurer not having refused to honor a proper warrant therefor.

Application filed in the supreme court July 13, 1910, for a writ of mandate to compel the state treasurer to pay a warrant issued upon the military fund. Denied.

*George C. Israel,* for relator.

*The Attorney General,* for respondent.

PARKER, J.—This is an original application in this court for a writ of mandate to compel the state treasurer to pay a warrant for the sum of $1,713.58, issued by the state auditor upon claims which had been audited and approved by the board of military auditors. After return and answer by the treasurer, the parties, by their counsel, filed a stipulation

[1]Reported in 113 Pac. 629.

agreeing upon the facts involved.    These facts, so far as material to our inquiry, may be briefly stated as follows:

In the latter part of the year 1908, the appropriation for the use of the militia of the state being wholly exhausted, Ortis Hamilton, then adjutant general, opened an account with the relator bank in his own name as adjutant general. For the purpose of obtaining credit upon such account, Hamilton assembled certain claims and alleged claims against the military fund, together with alleged vouchers therefor, aggregating $1,713.58.    These claims were deposited with the relator, and it placed to the credit of Hamilton, as adjutant general, the full face value thereof.    This fund was wholly disbursed by Hamilton thereafter by checks purporting to have been signed by him as adjutant general.

Thereafter, on March 12, 1909, an act was approved appropriating additional funds to pay claims of this nature. Thereafter, on March 22, 1909, these claims having been audited and allowed by the board of military auditors, were by Hamilton presented to the state auditor, when he issued the warrant, believing at the time that it was being issued in payment of valid claims against the state.    The warrant was issued in the name of Ortis Hamilton as adjutant general, who thereupon indorsed and surrendered the same to the relator in lieu of the claims upon which he had obtained credit with the relator, and thereupon the warrant became the property of the relator.    Over $1,300 of the amount of these claims was based upon false, fraudulent, and forged vouchers, and the state received no benefit whatever on account thereof.    This fact was well known to Hamilton at all times since the creation of the pretended indebtedness represented by such fraudulent vouchers, and except as to Hamilton himself, who was a member of the board of military auditors, the auditor and state officers did not know of the fraudulent character of these claims until after the issuing of the warrant thereon.

It needs no argument to demonstrate that if Hamilton was

the relator in this proceeding and still the holder of the warrant, he could not successfully maintain this proceeding and thereby enforce the payment of the warrant by the treasurer. This being the law, the relator, of course, is in no better position, unless it be held that the warrant is negotiable paper acquired by the relator as an innocent holder for value before maturity. That such warrants are "not negotiable in the sense of excluding inquiry into the legality of their issue or to exclude defenses thereto," has been determined by the previous decisions of this court, in harmony with the general rule upon that subject. *Bardsley v. Sternberg*, 17 Wash. 243, 49 Pac. 499; *West Philadelphia Title & Trust Co. v. Olympia*, 19 Wash. 150, 52 Pac. 1015; 28 Cyc. 1570.

It is suggested by learned counsel for the relator that since, under §§ 7222 and 7223 of Rem. & Bal. Code, these claims were audited and allowed by the board of military auditors, the state ought not now be heard to say the warrant issued thereon is invalid. There would be some force in this contention if there was anything in those sections which indicated an intention on the part of the state to give to such warrants the full force of negotiable instruments; but clearly there is no such intention therein expressed, and we would not be warranted in imputing to the legislature any such intent unless the law clearly so indicated.

We are of the opinion that since the admitted facts show this warrant to have been illegally issued, in that it was based largely upon false and fraudulent claims, the treasurer's duty to refuse payment thereof is clear, whether it be presented by the original payee or his assignee, the relator.

It was suggested on the oral argument that, since the agreed facts show the amount of the fraudulent claims and valid claims separately, upon which the warrant was issued, we should in any event direct payment of the warrant for the amount of the valid claims. This would be performing the duty of the auditing board and the state auditor. We

have nothing before us indicating that the auditing board
and auditor will refuse to audit and issue a warrant for the
proper amount of these valid claims upon surrender of this.
warrant. And even if this record did so indicate, we are
unable to see how the treasurer could be compelled to pay
such amount except upon a proper warrant therefor issue by
the auditor. When a proper warrant in payment of these
claims is refused the relator, it will be time enough for the
courts to hear any controversy arising upon such refusal.
The treasurer's duty, among others prescribed by statute,.
is "To disburse the public moneys only upon warrants
drawn upon the treasurer by the state auditor." Rem. &
Bal. Code, § 9026. We do not think it is within our prov-
ince in this proceeding to adjudicate the amount due upon
these claims, even though the agreed facts leaves no uncer--
tainty as to such amount.

The writ is denied.

Mount, Fullerton, and Gose, JJ., concur.