[No. 24393. Department Two. March 13, 1933.]

THE STATE OF WASHINGTON, *on the Relation of C. S. Bonsall, Plaintiff,* v. OTTO A. CASE, *as State Treasurer, Respondent.*[1]

[1]Reported in 19 P. (2d) 927.

244

John H. Dunbar, for relator.

The Attorney General and John W. Hanna, Assistant, for respondent.

MAIN, J.—This is an original application in this court for a writ of mandamus.

The relator, C. S. Bonsall, for more than a year prior to January 11, 1933, was the duly qualified and acting deputy auditor of this state. The respondent is the duly elected, qualified and acting treasurer of the state. The relator's connection with the state auditor's office was severed January 11, 1933, and he has not since that time been in the service of the state in the auditor's office. January 10, 1933, or the day before his connection with the auditor's office ceased, the relator prepared a voucher for a period of fourteen days, which was in addition to the regular monthly compensation which he had received during his term of service. The state auditor allowed the claim and issued a warrant therefor. When the warrant was presented to the state treasurer, that officer refused to pay the same, claiming that it was illegal. During the year prior to January 11, 1933, the relator had taken no vacation, and the warrant issued was intended to cover the vacation period.

Section 133, chapter 7, Laws of 1921, p. 67, Rem. Rev. Stat., § 10891, reads as follows:

"Each subordinate officer and employee of the several offices, departments, and institutions of the state

government shall be entitled, during each twelve months' period, to fourteen days' leave of absence with full pay.''

[1] It is the relator's contention that, since he did not take a vacation during the twelve months prior to the time that his connection with the office of the state auditor ceased, he was entitled to such vacation period after the severance of his connection with that office. The statute just quoted provides that ''each subordinate officer'' of the state government shall be entitled, during each twelve months' period, to fourteen days' leave of absence with full pay. The statute, by its express language, would appear to contemplate that the one receiving a vacation on pay must be a subordinate officer or employee at the time the vacation was taken.

We see nothing in the statute which would authorize the payment, for a vacation period, to one who had been an employee of the state, subsequent to the time that his service ended. The purpose of the statute, as we view it, was to give each employee, during the time that he was in the service of the state, a vacation of fourteen days on pay, but it does not follow from this that the state auditor could issue a warrant covering a vacation period which had not been taken, and, in effect, grant the employee a vacation on pay after he had ceased to be an employee of the state. If this could be done, it would be, in effect, the giving to the employee of a gratuity or bonus in addition to his regular salary which he agreed to accept at the time the employment or service began.

Section 25 of article II of the constitution of this state provides that the legislature shall never grant any extra compensation to any public officer, agent, servant or contractor after the services ''shall have been rendered or the contract entered into. . . .''

Construing this provision of the constitution in *State ex rel. Eshelman v. Cheetham,* 21 Wash. 437, 58 Pac. 771, it was held that the state senate had no right to allow additional compensation to its employees after the period of their service, based upon the great number of hours that they were required to put in. While that case is not exactly in point, it is, at least, authority for the view that a gratuity, extra compensation or a bonus, whatever it may be called, cannot be paid to an employee of the state, in addition to his regular salary, after the service has been rendered.

It is undoubtedly true that, during the term of the service, the state auditor has a discretion to determine at what times the respective employees may avail themselves of the vacation period on pay, as provided in the statute, but when the employment ceases, the state auditor's discretion in the matter likewise ceases, and it becomes a question merely of the construction of the statute. The construction placed upon the statute heretofore by the *Attorney General's* office should be given proper consideration, but it is not controlling. It is our conclusion on this branch of the case that, when the relator's service was terminated, his right to a vacation ceased, and he no longer had a right to compensation for a vacation period which he did not take during the time of his employment.

■ It is further contended that, since the respondent, the state treasurer, is a ministerial officer and the warrant was valid on its face, that officer had no right to question its validity. Section 11019, Rem. Rev. Stat., provides that

"It shall be the duty of the state treasurer,— . . . (2) To disburse the public moneys, only upon warrants drawn upon the treasurer by the state auditor, in the order of their number, date, and issue; . . ."

There is nothing in the language of that statute, or which arises by necessary implication, that prevents the state treasurer from questioning the validity of a warrant presented to him for payment. In *State ex rel. Publishing Co. v. Lindsley,* 3 Wash. 125, 27 Pac. 1019, it was held that the state treasurer could lawfully question the legality of a warrant issued by the state auditor on the ground that the legislature had made no appropriation out of which the warrant could be paid. It was there said:

"The treasurer, therefore, being in a position where he is as well qualified as the auditor to say whether or not there is an appropriation, may lawfully question the legality of any warrant on that ground."

In *State ex rel. Olympia National Bank v. Lewis,* 62 Wash. 266, 113 Pac. 629, it was held that it was the duty of the state treasurer to refuse payment of warrants illegally issued upon fraudulent claims. It was there said:

"We are of the opinion that since the admitted facts show this warrant to have been illegally issued, in that it was based largely upon false and fraudulent claims, the treasurer's duty to refuse payment thereof is clear, whether it be presented by the original payee or his assignee, the relator."

Upon the authority of those cases and upon reason, we are of the opinion that it is not only the right of the state treasurer, but that it is his duty as well, to refuse to pay a warrant which he believes is not valid.

The writ will be denied.

BEALS, C. J., TOLMAN, STEINERT, and BLAKE, JJ., concur.