[No. 26438. *En Banc.* March 3, 1938.]

ASSOCIATION COLLECTORS, INC., *Respondent and Cross-appellant,* v. KING COUNTY, *Respondent,* CLAUDE G. BANNICK, *Appellant,* "RADIO SPEAKER" JOHN C. STEVENSON *et al., Respondents,* UNITED PACIFIC CASUALTY INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 76 P. (2d) 998.

*Ballinger, Hutson & Boldt,* for appellants.

*Patterson & Patterson,* for respondent and cross-appellant.

*B. Gray Warner* and *Edwin C. Ewing,* for respondent King County.

*John C. Stevenson, H. Sylvester Garvin, L. Presley Gill,* and *Colvin & Rhodes,* for respondents Stevenson *et al.*

ROBINSON, J.—Three actions were instituted in the superior court of King county by Association Collectors, Inc., against all the other parties named in the above caption, and, the parties and issues being identical, were consolidated for trial. At the close of the trial, a separate judgment was entered in each case, and in each case separate appeals and cross-appeals have been brought to this court. The actions have again been consolidated for purposes of appeal upon a statement of facts filed in cause No. 281870.

The Association Collectors, Inc., brought the actions as assignee of various merchants to recover the price of goods alleged to have been sold to King county at its request and at the request of the then sheriff of the county, its purchasing agent, and county commissioners, as its agents. These agents and officers were joined as defendants in their individual capacities, for, although the actions were principally directed against the county, the plaintiff was in doubt as to who might ultimately be held liable. The United Pacific Casualty Insurance Company was also made a defendant, it being surety upon the official bonds of the sheriff and the three county commissioners.

The fourth paragraph in each of the complaints reads as follows:

"That all of said goods, wares and merchandise were for the necessary upkeep, maintenance and operation of the jail and the sheriff's office of King county, Washington, and consisted principally of food and foodstuffs for the upkeep and maintenance of the prisoners and inmates of said King county jail."

The court entered judgment against ex-Sheriff Bannick and the United Pacific Casualty Insurance Company as surety on his bond in cause No. 281870, for $3,846.56, made up of $942.33 for automobile repairs, gasoline, oil, and tires, and $2,904.23 for food supplies for the county jail; in cause No. 282161, for $745.88 for soap, chemicals, and sanitary supplies used in the county jail; in cause No. 284236, for $429.80 for food supplies for the county jail; and against plaintiff in all three actions in favor of the defendant county, its purchasing agent Angel, and its commissioners Messrs. Stevenson, Nash, and Brinton, and their surety.

Bannick and his surety have appealed from all three judgments. The plaintiff has cross-appealed from that part of the judgments dismissing its actions against King county, the county's purchasing agent, and its commissioners, lest, in the event that the appeal of Bannick and his surety should be successful, it might be left without a recovery against any of the defendants.

For the most part, the claims sued upon originated in 1934. The evidence showed that, for the year 1934, the county commissioners, in fixing the budget of the sheriff, appropriated ten thousand dollars for food and clothing for the prisoners in the county jail. On December 24, 1934, the commissioners made an emergency appropriation for food and clothing for the prisoners of four thousand dollars. In addition thereto,

the sheriff received for feeding Federal prisoners, at seventy-five cents per prisoner per day, the sum of $7,191, which, as provided by law, he turned over to the general fund in the office of the county treasurer, and from this sum his jail budget received credits of $1,702.30 and $1,654.56, making a total received by him for the feeding of prisoners in the county jail during the year 1934, of $17,356.86.

The average number of prisoners daily confined in the county jail during that year was 222, and the number of prisoners' board days was 80,986. The approximate cost of food and clothing for the prisoners was thirty cents per day; therefore, the total cost of those items was $24,295.80. Deducting from this amount the sum of $17,356.86, the aggregate of the budget allowance, the emergency allowance, and the amount credited to him for feeding Federal prisoners, leaves a shortage of $6,938.94 on this item of the jail budget.

There is no testimony whatever that thirty cents per day for feeding the prisoners is in any way excessive or unreasonable. It is, in fact, just one-half of the maximum allowable under the statute, Rem. Rev. Stat., § 10188 [P. C. § 3419].

There is also no evidence to the effect that the sanitary supplies were not required for the purpose of keeping the jail in a healthful and sanitary condition, and none that the automobile repairs and supplies were unnecessary. There is a great deal of evidence to the effect that ex-Sheriff Bannick, during his eight years of office, was quite indifferent to the budget law, and that the commissioners were in constant trouble with him on that account. While this evidence would be quite relevant were we engaged in allocating the moral blame for the condition of affairs which necessitated these actions, we think it is but little relevant to the

legal aspects of the matter, and these are, in themselves, sufficiently difficult to require our concentrated attention.

The original budget allowance for food and clothing for the county jail in 1934 was ten thousand dollars. Mr. Lewis, chief deputy sheriff, testified that, as early as the latter part of June or the first of July, he called the attention of the county commissioners to the fact that this would not be sufficient. Mr. Stevenson, who was chairman of the board of commissioners, corroborates this, and it appears that, in July, the commissioners sought the advice of the prosecuting attorney as to whether they could make an emergency appropriation for the sheriff's office and were advised that they could.

In November, according to Lewis, the commissioners agreed that they would furnish a sum sufficient to carry the jail the balance of the year in food and supplies, but not take care of any back bills. An emergency appropriation of four thousand dollars was made on December 24th. Mr. Stevenson testified that the board did not know of the back bills, and he understood, and the board understood, that the four thousand dollars would take care of all of the food bills for the year. The commissioners would not necessarily know of the condition of the food budget, for the auditor's monthly report to the commissioners showed only bills which had been paid and not those outstanding, and it seems that many bills were not presented for one, two, or three months after they had been incurred.

It appears that all of the items in dispute were purchased upon requisition, signed by the purchasing agent, Mr. Angel, although emergency orders were sometimes filled before the requisitions were formally executed.

As we view it, the answer to the principal question

in this case will almost automatically dispose of all the others. That question is: Are ex-Sheriff Bannick and his surety legally liable for the claims sued upon? All of the other defendants sought to escape liability by answering that question in the affirmative, relying upon a literal application of the following language quoted from a section of the county budget law, Rem. Rev. Stat., § 3997-5 [P. C. § 1652-5]:

"Expenditures made, liabilities incurred or warrants issued in excess of any of the detailed budget appropriations or as revised by transfer as herein provided shall not be a liability of the county but the official making or incurring such expenditure or issuing such warrant shall be liable therefor personally and upon his official bond. . . ."

Appellants Bannick and his surety, in spite of this very definite statutory language, contend that the county is liable and that they are not. This contention is made upon the theory that it is the absolute mandatory duty of the county to feed its prisoners and maintain them in sanitary quarters; and, therefore, if circumstances arise which require expenditures for these purposes in excess of the budget appropriation, the duty must be performed and the expenditures made, budget or no budget. It is argued that this duty cannot be abandoned outright, or, what amounts to the same thing, cast upon the sheriff to perform at his personal expense, and it is said that it is so manifestly apparent that such expenditures cannot be subjected to budget restrictions that the court should hold that they were not intended to be within the purview of the law. In this connection and as a species of *reductio ad absurdum,* the appellant put the following question:

"Assuming that in 1934 the actual, necessary and reasonable cost of feeding prisoners in the county jail (including clothing, medicines and sanitary supplies) was $24,295.80, and the budgetary and other allow-

ances given to the sheriff for that purpose were $17,-356.86, then when these allowances were exhausted was it the legal duty of the sheriff to release his prisoners; to starve them; or to feed them?"

The respondents do not attempt to answer this question. They stand strictly upon the statute.

Contrary to the contention of the appellant, it is apparent that the budget law was intended to apply to mandatory expenditures. We quote a portion of the sixth section, Rem. Rev. Stat., § 3997-6 [P. C. § 1652-6]:

"Upon the happening of any emergency caused by fire, flood, explosion, storm, earthquake, epidemic, riot or insurrection, or for the immediate preservation of order or of public health or for the restoration to a condition of usefulness of any public property the usefulness of which has been destroyed by accident, or for the relief of a stricken community overtaken by a calamity, or in settlement of approved claims for personal injuries or property damages exclusive of claims arising from the operation of any public utility owned by the county, *or to meet mandatory expenditures required by any law* the county commissioners may, upon the adoption by the unanimous vote of the commissioners present at any meeting the time and place of which all of such commissioners shall have had reasonable notice, of a resolution stating the facts constituting the emergency and entering the same upon their minutes, make the expenditures necessary to meet such emergency without further notice or hearing." (Italics ours.)

Nevertheless, fires, floods, explosions, storms, earthquakes, riots, and insurrections do not wait for commissioners to adopt resolutions by unanimous vote at meetings had on reasonable notice. Surely, there must be a legal way to relieve a sheriff who exceeds the budget in the face of such emergencies. The feeding of prisoners may not be so actively emergent as in those cases, but it involves a no less mandatory duty.

The sheriff is the custodian of the jail and the

prisoners therein confined. Rem. Rev. Stat., § 10195 [P. C. § 3409]. The county must pay for the prisoners' board; although the commissioners must not pay more than sixty cents per day for the board of each prisoner, § 10188. The feeding of prisoners is an indispensable governmental function, so far so, that warrants issued for that purpose by a city in excess of its constitutional limit of indebtedness are valid on the score of necessity; *Gladwin v. Ames,* 30 Wash. 608, 71 Pac. 189; and claims for such expenditures made by a sheriff must be paid by a county, although the county's constitutional debt limit be exceeded thereby. *Smart v. Board of County Commissioners,* 67 Okla. 141, 169 Pac. 1101. It has been so held of warrants issued for keeping the jail comfortable, warm, clean, and free from noxious odors. *Breathitt County v. Cockrell,* 250 Ky. 743, 63 S. W. (2d) 920, 92 A. L. R. 626.

This court has announced an even broader rule in *State ex rel. Porter v. Superior Court,* 145 Wash. 551, 261 Pac. 90:

"It clearly appears that the funds provided in the regular budget for the sheriff's office had been exhausted; and that, unless funds were provided in the manner directed by the statute, the sheriff's office would necessarily cease to function. The county has no other peace officer, the proper and prompt service of process, both civil and criminal, is a necessity, and the maintenance of the sheriff's office is one of those mandatory necessities which will justify the ignoring of even constitutional debt limitations."

In a very recent case, the thought that the feeding of prisoners is an indispensable governmental duty is expressed in a somewhat striking and novel fashion. The court said, in *Protest of Kansas City Southern R. Co.,* 157 Okla. 246, 11 P. (2d) 500, that indebtedness for the feeding of prisoners is "indebtedness incurred

by law and not by contract." Certainly, if the appellant had neglected to feed the prisoners in his charge, he would not only have been guilty of neglecting the duties of his office, but he would have subjected himself and his bond to suits for damages on the part of the prisoners themselves.

As we have seen, the original budget appropriation for feeding the prisoners and keeping the jail in a sanitary condition proved insufficient. The county commissioners made an emergency appropriation on December 24th, which was also insufficient. It was their duty to fully provide for these mandatory expenditures. We are satisfied from the evidence of Mr. Stevenson, chairman of the board, that they would have done so had they known the true facts and conditions. They might legally have made an additional appropriation, even after the close of the year. *State ex rel. Spinney v. Hoss,* 178 Wash. 397, 35 P. (2d) 10. Does the fact that they failed to perform this duty, either intentionally or through mistake of fact, require us to hold that the sheriff must pay the county's just debts?

Counsel for King county insist that there is no escape from so holding short of amending or mutilating the budget law, and we are reminded, by a multitude of quotations in the county's brief, that it is not the province of the court to amend or modify statutes or insert exceptions therein, or to judge of their wisdom or expediency, or to evade them from good motives. These principles are so strongly emphasized as to constitute a tacit acknowledgment by counsel for the county that they are themselves of the opinion that what we may—for want of a more exact term—call the general equities of the case, are strongly in favor of appellants.

We are of that opinion, and we are further of the

opinion that it may be given practical expression without in any way emasculating the budget law or amending it or evading it or inserting exceptions therein. The statute itself provides that a court of competent jurisdiction may order expenditures made in excess of budget appropriations to be paid. We find, in § 5 of the budget law, Rem. Rev. Stat., § 3997-5, immediately after the provision relied upon by the respondents as fixing the liability of the sheriff for excess expenditures, this additional provision:

"The county auditor shall issue no warrant and the county commissioners shall approve no claim for any expenditure in excess of said detailed budget appropriation or as revised under the provisions hereof, *except upon an order of a court of competent jurisdiction,* or for emergencies as hereinafter provided." (Italics ours.)

The California budget law is like our own in every material respect. In *Niceley v. County of Madera,* 111 Cal. App. 731, 296 Pac. 306, in which the county was sued for detective hire and where § 4307 of the Political Code authorizing the sheriff to employ detectives had been passed before § 3714, the budget law, the plaintiff contended that § 4307 had not been repealed by the budget law, and he was, therefore, entitled to recover from the county, notwithstanding that the fund allowed under the budget for detective hire had been exhausted. He was held to be so entitled. We may note in passing that this case is rather persuasive authority for the contention made by the appellant that the budget law was not intended to repeal the laws making it the duty of the county to pay for the prisoners' food, but we cite the case primarily for another purpose. In the course of the opinion, the court had occasion to construe the words of the California statute which are identical with those which we have italicized in the above quotation from our own:

"Before considering the question of whether section 3714 of the Political Code, by implication or otherwise, repeals the provisions of section 4307 of the Political Code, it is important to observe that subdivision 5 of section 3714, *supra*, does not make final the budget as adopted by the board of supervisors, nor does it make final the sum or allowance made or allotted to any particular official. *The question is left open for a determination by the court as to whether any other items of expenditure shall be determined to be a claim against the county, and whether the county shall be held liable therefor. This plainly appears from the words specifying that no payment shall be made 'except upon an order of a court of competent jurisdiction.'* And this provision follows that portion of the section relating to expenditures outside of, and in excess of, the budget allowance." (Italics ours.)

We agree with that construction. The trial court was competent to pass upon the validity of these claims. That, indeed, was the very purpose for which it took and exercised jurisdiction of these cases. In our opinion, it should have allowed such of the claims against the county as were clearly proven to have been based upon the furnishing of goods which were indispensable to the carrying on of the county's governmental functions.

■ It was, however, the burden of the ex-sheriff, if he was to escape the liability for expenditures made in excess of the budget appropriations, to prove that they were not only reasonable in amount but incurred for things which were *indispensably* required for the discharge of the county's governmental functions. This burden could not be satisfied by evidence that the expenditures were made for things which were merely of great convenience and assistance in the performance of those functions, or even by testimony which says that they were necessary for their performance. The word "necessary" is a relative one

whose appropriate application to given conditions is wholly a matter of opinion. This remains to some extent true even when the words "absolutely necessary" are used. We think that the appellants Bannick and his surety fully met the required burden with respect to the expenditure for food, clothing, and sanitary supplies for the jail, but not with respect to the expenditures for automobile repairs, tires, gasoline, and oil.

There is another reason, however, why the plaintiff below was entitled to judgment against the defendant county, and this reason applies to all the bills in suit. It was admitted that all the merchandise involved in the three cases was ordered by, delivered to, and used by, the county. The county was, therefore, *prima facie* liable for their payment. The county set up an affirmative defense that it was not actually liable by reason of the following provisions of the statute:

"Expenditures made, *liabilities incurred* or warrants issued *in excess of any of the detailed budget appropriations* or as revised by transfer as herein provided *shall not be a liability of the county but the official* making or *incurring such expenditure* or issuing such warrant *shall be liable therefor personally* and upon his official bond." (Italics ours.)

The county proved in the court below that all the money budgeted had been spent and that none remained to pay the bills sued upon; hence, it says it is not liable, but the sheriff is. But this conclusion does not necessarily follow.

Let us suppose that a county budget allows the sheriff one thousand dollars for gasoline. On January 10th, through the county purchasing agent, he orders five hundred dollars worth of gasoline from A, which is delivered. On February 10th, he orders five hundred dollars worth from B, which is also delivered,

and on March 10th, five hundred dollars worth from C, which is delivered. On March 11th, the county is plainly liable to A and B, but is it liable to C? It would seem that that liability was "incurred" in excess "of the detailed budget appropriation," which liability the statute provides "shall not be a liability of the county but of the official making or incurring such expenditure . . ." The county is, therefore, not liable to C. That is the sheriff's bill.

Let us further suppose that on March 15th the county commissioners approve the bills of B and C, and they are paid. On March 16th, A presents his bill, and it is disallowed, upon the ground that there is no money left in the budget. A sues the county and the commissioners; and the defendants, as was done in this case, set up the statute as an affirmative defense and prove there is no longer any money on hand. But A, upon the argument at the close of the evidence, says: My bill was the very first bill incurred and therefore at a time when there was unquestionably one thousand dollars in the budget. The county became liable and has owed me that money ever since I delivered the gasoline on January 10th. Surely, the liability is not discharged because the county commissioners unlawfully paid the sheriff's obligation to C on March 15th. Besides, if the law be interpreted as you interpret it, it would impair the obligation of contracts, in violation of Art. 1, § 10 of the constitution of the United States. The sheriff on his behalf says: I can only be held liable for bills incurred in excess of the budget appropriation. This bill of A's, as he says, was clearly not so incurred.

In the case supposed, it is clear that the county could not make any satisfactory answer to the contention of the sheriff, nor do we think it could make any satisfactory answer to the contention of A. In fact,

the contention put in the mouth of A is fully sustained by the only direct authority which has been cited to us or which we have been able to find. *H. S. Crocker Co. v. Lake County*, 4 Cal. App. (2d) 29, 40 P. (2d) 931. The case was decided by the third district court of appeals of California. The supreme court of California, however, declined to review it on March 21, 1935. The facts are as follows:

"This case was tried on a written stipulation of facts concerning which there is no dispute. December 31, 1929, the plaintiff was awarded a contract to supply the County of Lake with furniture for its courthouse for the aggregate sum of $7,429.84. There was then ample money in the 'Capital Outlay Court House Fund,' from which this charge was to be paid, to meet all obligations which had then been incurred against that fund. The contract was fully performed and the furniture was supplied by the plaintiff, in accordance with the terms thereof. April 19, 1930, plaintiff was paid on that account the sum of $5,572.40. This left a balance of $1,857.46 due to the plaintiff on the contract. June 11, 1930, a claim for the last-mentioned sum was presented to the board of supervisors of Lake County. Subsequent to the awarding of the furniture contract to plaintiff and before its claim for the balance of $1,857.46 had been presented for payment, other obligations were incurred by the county for the payment of which the entire 'Capital Outlay Court House Fund' was exhausted, except the sum of $7.94. Plaintiff's claim was not allowed. Suit was commenced against the county to recover a judgment for the amount due on the contract. The court adopted findings in accordance with the facts above related, and thereupon rendered judgment in favor of the plaintiff for the sum of only $7.94. From this judgment the plaintiff has appealed."

The county had set up that portion of subd. 5 of § 3714, Political Code of California, as amended, which is, in substance, the same as that portion of our Rem.

Rev. Stat., § 3997-5, relied upon by the county in this case. The court said, among other things:

"This amendment of the Political Code may not be construed so as to defeat vested rights which have accrued by virtue of obligations incurred by the terms of previous valid contracts. Such a construction of this section of the code would render the preceding language thereof void under the provisions of article I, section 10, of the Constitution of the United States which precludes the impairing of the obligations of a contract by declaring that 'No state shall . . . pass any . . . law impairing the obligation of contracts.' *The language heretofore quoted from section 37 14 of the Political Code should be construed to mean that 'liabilities incurred . . . in excess of . . . the budget appropriations' are invalid.*"

"The plaintiff's claim in the sum of $1857.46 was legally incurred and is a valid obligation against the County of Lake for which sum it is entitled to judgment notwithstanding the fact that the funds from which it was payable were practically exhausted at the time the claim was presented for payment. [Citing cases.]"

In addition to the cases cited in the opinion, see, also, *Anadarko Funeral Home v. Scarth*, 173 Okla. 103, 46 P. (2d) 539, a case not in point on its facts but applicable in principle.

■ It follows from what has been said that the county did not establish its affirmative defense by merely proving that there were no funds left in the budget at the time the bills were presented. To establish its affirmative defense, it was incumbent upon the county to show by a preponderance of the evidence that the bills sued upon were incurred after the budget appropriations were exhausted by previous commitments. This, as we read the record, it did not do.

The bill of Piston Service, Inc., was for $193.35. Its verified claim shows that of this amount $146.58 was incurred in April, 1934. For the balance, no dates are

given. But the county shows, on its own exhibit 27, which is a list of its unpaid bills—"Piston Service, Inc., Apr., May, June, July, 1934, $193.35." The Commercial Tire Company's verified bill shows, by dates and requisition numbers, that, of the $238.48 demanded, $108.35 was incurred on the second of January, 1934, $19.05 in March, $88.60 in May, $11.43 in June, $4.50 in July, $5.05 in September, and $1.50 in November. Defendant's exhibit 27 shows: "Commercial Tire Company Apr., May, June, September, November, December, '34 $238.48."

Without further going into details, it may be said that defendant's own exhibit 27 shows that the Sunset Electric Company's bill was incurred in March, April, May, August, and October, 1934; the Standard Oil Company's bill in July, 1934, and the General Petroleum Company's bill in July, August, September, and October, 1934. These are all the bills in suit having to do with automobile supplies or repairs, or anything other than food and clothing for the prisoners and sanitary supplies for the jail.

There is no proof in the record when the budget providing for such matters was exhausted. There is evidence in the record (defendant's exhibit 25) that on December 10, 1934, the commissioners granted an emergency appropriation under the heading, "Motor Vehicle Operation and Maintenance, Gasoline Only." From this, it might be inferred that the budget was exhausted about that time, but every one of the foregoing bills was incurred before that date. Also, for example, it seems impossible that the budget could have been exhausted when $108.35 of the Commercial Tire Company's bill was incurred on January 2nd, and highly improbable that it was exhausted when $148.58 of the Piston Service Company's bill was incurred in April. But it is useless to speculate further. There is no evidence that

a single one of these bills was incurred *after* the budget was exhausted.

The same condition obtains as to the food and sanitary supply bills. We cannot determine from the record when that budget appropriation was exhausted. There is evidence that it appeared early in July that the original amount allowed would not be sufficient, and that about that time $1,604.56 was added to it in the shape of an allowance for feeding Federal prisoners; that an emergency appropriation of four thousand dollars was made on December 24th, and that a further allowance of $1,702.56, re feeding Federal prisoners, was made somewhere along the line at a date undetermined. But there is no evidence from which the condition of the budget can be determined at any particular date. The Ryan Fruit Company's bill was incurred, as defendant's exhibit 27 shows, variously, during the last seven months of the year; the Novelty Mills Company's during July and September; the Washington Cooperative Egg & Poultry Association's in July and September; the Palace Fish & Oyster Company's in January, July, August, September, October, November, December; the North Coast Chemical & Soap Works' in June, July, September, October, and November, and Crenshaw & Bloxom's in September, October, November, and December. Here, again, the county has not shown that any of these bills, or any part of them, were incurred after the budget was exhausted, or even when there was no actual cash available; and it, therefore, did not sustain its affirmative defense as to them.

The fact is that the only thing the record shows with certainty is that the budget was exhausted. There can be no doubt about that, since it is shown that all appropriations were paid out and a large amount of bills remained unpaid. It is highly probable that those portions of the bills which were incurred in the last two

or three months of the year were incurred after the budget was exhausted. But it is not certain, because the record is silent as to what application was made of the four thousand dollar emergency appropriation made on December 24th, or the $750 gasoline emergency appropriation made on December 10th. It is practically certain that a considerable portion of the amounts sued for were incurred prior to the exhaustion of the budget, for a number of the items involved were sold and delivered during the first six months of the year, some, as we have seen, as early as January 2nd. If it is actually the fact that these bills were incurred before the budget was exhausted, then, since all the money is gone, it must follow that the commissioners approved and ordered paid a number of bills which were incurred after the budget was exhausted.

We take it that the county was in no position to offer the requisite proof, for it appears from the record that the sheriff kept no accurate account of the bills incurred, and that neither the purchasing agent nor the commissioners did so. At least, no one of these persons seemed to know the condition of the budget at any particular time. This is a most extraordinary circumstance in view of the fact that, as we have seen, the statute expressly provides that the sheriff shall be personally liable for bills incurred in excess of the budget appropriation, and it is provided further along in the same section of the statute:

"Any county commissioner, or commissioners, or county auditor approving any claim or issuing any warrant in excess of said budget appropriation except as above provided shall forfeit to the county fourfold the amount of such claim or warrant. . . ."

We find no sufficient reason to hold Angel, the purchasing agent, or the county commissioners, or any of them, liable to the plaintiff in these actions.

In accordance with the foregoing opinion, it is or-

dered that the judgment in cause No. 281870 be reversed and a judgment entered in favor of the plaintiff and against King county for the sum of $3,846.56; that the judgment in cause No. 282861 be reversed and a judgment entered in favor of the plaintiff and against King county for the sum of $745.88; and that the judgment in cause No. 284236 be reversed and a judgment entered in favor of the plaintiff and against King county in the sum of $429.80, all judgments with such interest as may be appropriate and legally taxable costs.

■ Association Collectors, Inc., prays that no costs be taxed against it in this court, pointing out that no one has at any time disputed that it was entitled to recover as against some of the defendants, and that the controversy in this court is almost wholly between Bannick and his surety on the one hand, and King county on the other. While this is true, and while the court has some latitude in the matter of costs, we fear that to depart from the ordinary rule that costs on an appeal shall be awarded to the successful party for the purpose of relieving the hardship of one of the parties would result in hardship to others. Certainly, the individual cross-respondents Angel, Stevenson, Nash, and Brinton are entitled to recover their costs from someone. The costs on appeal of appellants Bannick and his surety will be taxed against respondent Association Collectors, Inc. The costs on cross-appeal of Association Collectors, Inc., will be taxed against King county. The costs of Messrs. Angel, Stevenson, Nash, and Brinton will be taxed against Association Collectors, Inc. As the parties in all three cases are identical, all costs may be included in the remittitur in cause No. 281870, the vehicle through which all three cases were brought to this court.

STEINERT, C. J., MAIN, HOLCOMB, BEALS, and SIMPSON, JJ., concur.

GERAGHTY, J. (specially concurring)—I agree with what Judge Blake says in his dissenting opinion as to the binding force of the budget law. It will not do to say that an emergency existed authorizing the sheriff, on his own motion, to bind the county. No executive officer of the county is authorized to incur any expense in excess of his budget allowance. The power to authorize emergency expenditures is reposed solely in the county commissioners, the governing board of the county. If, by reason of the failure of the board to make a sufficient allowance, the sheriff found himself without means to properly care for the prisoners committed to his charge by the court, the court itself could, on a proper showing and in the exercise of its inherent power to enforce its own orders, have authorized the sheriff to procure what was necessary upon a pledge of the county's credit and directed that the amount be covered into the succeeding county tax levy.

But, while holding these views as to the first ground stated by the majority for reversal, I cannot escape the force of the majority's reasoning on the second ground. I therefore concur in the result.

BLAKE, J. (dissenting)—It seems to me that this decision effectually destroys certain features of the county budget act (Laws of 1923, chapter 164, p. 523; as amended by Laws of 1925, Ex. Ses., chapter 143, p. 391, and Laws of 1927, chapter 301, p. 736 [Rem. Rev. Stat., §§ 3997-1 to 3997-10 (P. C. §§ 1652-1 to 1652-10)]).

As pointed out in the majority opinion, the obligations under consideration were incurred by the sheriff in excess of his budgetary allowance and without obtaining authority to incur them, as provided by the act. Section 5 of the act (Rem. Rev. Stat., § 3997-5 [P. C. § 1652-5]) explicitly provides that obligations incurred in violation of its terms

" . . . *shall not be a liability of the county but the official making or incurring such expenditure . . . shall be liable therefor personally and upon his official bond. . . .*" (Italics mine.)

The fact that the obligations incurred by the sheriff were necessary to carry out mandatory duties of his office does not excuse failure to comply with the provisions of the act. For the act (Rem. Rev. Stat., § 3997-6 [P. C. § 1652-6]) explicitly provides for such emergency expenditures, when an officer's budget is insufficient for him to carry on his mandatory duties. That section provides:

"Upon the happening of any emergency . . ., *or to meet mandatory expenditures* . . . the county commissioners may . . . make the expenditures necessary to meet such emergency without further notice or hearing." (Italics mine.)

Nor is the refusal of the county commissioners to authorize emergency expenditures a justifiable excuse for incurring the obligations in defiance of the terms of the act. If the commissioners arbitrarily refused to authorize necessary emergency expenditures, the sheriff had recourse to the courts by way of mandamus.

Neither can the county now be held liable for such expenditures on the theory (upon which I understand the decision in this case to rest) that, had the sheriff applied to the court, it *would* have authorized and directed the expenditures, because of their mandatory character. For the act (Rem. Rev. Stat., § 3997-6) contemplates that, with respect to such expenditures, the court shall be an accessory *before* and not *after* the fact.

I dissent.

MILLARD, J., concurs with BLAKE, J.