[Nos. 32267, 32268. Department Two. July 8, 1953.]

HAROLD J. KERR, *Respondent*, v. KING COUNTY, *Appellant.*
FRED OWEN, *Respondent*, v. KING COUNTY, *Appellant.*[1]

[1] Reported in 259 P. (2d) 398.

*Charles O. Carroll* and *V. D. Bradeson*, for appellant.

*Monheimer, Schermer & Mifflin (Melville Monheimer, Jr.,* of counsel), for respondents.

SCHWELLENBACH, J.—This is an appeal from judgments rendered against King county for services rendered.

Harold J. Kerr sued King county for $340.76 for overtime work performed for the county. Other workmen assigned their claims to him. In his second cause of action, he sued for $329.64 for services performed by Dorace A. Robertson. The third cause of action was for the value of services performed by Edward A. Hayden. This cause was dismissed. In his fourth cause of action, he sued for $613.76 for services performed by W. C. Muhlenberg.

Fred Owen sued for $95.16 for services performed by himself. Both cases were consolidated for trial.

At the beginning of the trial, each cause of action of the complaints was amended to include the following:

"That within three years prior to the filing of the complaint herein plaintiff performed work and labor for the benefit of the defendant, which said work and labor defendant accepted and permitted the benefit thereof to accrue to the said defendant; that said work and labor was all after the expiration of the normal 8-hour day for which plaintiff was specifically employed."

The plaintiffs were all employees of King county district No. 3 (north district). Joseph A. Whetstone was the commissioner representing district No. 3 at the time the work was performed. He was later removed from office, and Dean C. McLean was appointed in his stead. Shortly thereafter, the employment of the plaintiffs was terminated. (This was before they were given time off for overtime theretofore performed, which will be discussed later.) The county claimed that the employment was terminated due to lack of funds; that more than the allocated funds had been spent, and that it became necessary to curtail the number of employees. The plaintiffs, on the other hand, claim that they were discharged because they were Democrats.

Each year, in accordance with the budget law, the county commissioners adopt, by resolution, a pay scale for the various classifications of positions, setting forth the monthly scale of wages for each classification. All of the plaintiffs were on monthly salaries. There is no question that each plaintiff received the full amount of his salary as provided in the budget.

However, this practice has grown up in King county. From time to time emergencies, such as floods, etc., require the men to work overtime on the roads. This is also true with regard to oiling jobs. The men may start to work at six a. m. and continue until ten p. m. When they work overtime, they are not compensated in cash. Their overtime hours are turned in on the regular pay roll. The accountant gives them time and one-half on their records, and that overtime is taken out in vacations within the year that it is served, in addition to the regular vacation, or by working

fewer hours on other days. For example, if a man has four hours of accumulated overtime coming, then he would take six hours off on a designated day, but he would be paid for it.

No resolution was ever adopted by the board of county commissioners providing for such arrangement, or giving the commissioner in each district control of the working hours, vacation hours, accumulated overtime, or the like. Such matters were not even discussed between them. But apparently each commissioner followed such procedure.

Each of the plaintiffs had acquired accumulated overtime. However, before they could add this to their vacation periods, their services were terminated. Mr. Kerr testified that he was discharged September 17, 1947, but was paid for the entire month, thus allowing him vacation time, but no overtime.

We quote the following findings of fact in the case of Owen v. King County. Similar findings were made in each cause of action in the Kerr case.

"III. That within three years prior to the filing of the complaint herein, plaintiff performed work and labor for the benefit of the defendant, at the special instance and request of said defendant; that defendant accepted and permitted the benefit thereof to accrue to said defendant. That said work and labor was in the direct employ of defendant, and that all of said work and labor was performed after the expiration of the normal 8-hour working day for which plaintiff was specifically employed. That by express agreement with the Board of County Commissioners of King County, by and through the then duly authorized representative of said Board of County Commissioners of King County, said work and labor was to be compensated at the rate of time and one-half.

"IV. That the Board of County Commissioners of King County passed no formal resolution allowing this overtime compensation, but that the allowance of this overtime compensation was within the framework of the resolution passed by said Board of County Commissioners and that incidental to it said Board of County Commissioners provided for it in their budget and fixed the wages for it.

"V. That the practice has been of long standing in King County, and is still the practice of King County, whereby

it is necessary in times of bad weather and emergency and flood conditions to work the road employees for substantial periods in excess of the 8-hour day. That said overtime has been compensated by time off during slack seasons, on an hourly basis, and accordingly the County and its citizens receive the benefit of said overtime work. That the overtime work performed by the plaintiff above named was required of said plaintiff by his direct superior by reason of emergency conditions, and that by reason of plaintiff's termination from his position with defendant, King County, plaintiff did not receive time off for said overtime work. That by said practice, said Board of County Commissioners have gained a benefit for said defendant which is within the framework of the budget.

"VI. That said express contract between plaintiff and defendant for the compensation of said overtime worked by said plaintiff was breached by defendant when defendant terminated plaintiff's employment and discharged plaintiff without compensating plaintiff for overtime which he had worked.

"VII. That in reliance upon said express agreement, plaintiff worked 61 hours overtime at the monthly rate of $250.00 per month, making a total due him of $95.16 from defendant."

We find nothing in the record showing any express agreement with the board of county commissioners of King county, as stated in finding No. 3. We are satisfied that there was no such express agreement.

We find nothing in the record showing that the allowance of overtime compensation was within the framework of the resolution passed by the board and that incidental to it the board provided for it in their budget and fixed the wages for it, as stated in finding No. 4.

We find nothing in the record that, by the practice of working road employees overtime, the board has gained a benefit for the defendant "which is within the framework of the budget," as stated in finding No. 5.

We find nothing in the record concerning an express contract, or the breach thereof, or the reliance thereon, as stated in findings No. 6 and No. 7.

If plaintiffs can recover at all, it must be because, as found in finding No. 3, they performed work and labor for

the benefit of the defendant, at the special instance and request of the defendant; and that the defendant accepted and permitted the benefit thereof to accrue to itself. In other words, they must recover on an implied contract.

A contract, to be binding upon a municipal corporation, must be executed by the department, board, committee, council, officer, or agent vested by law with power to make it. A county is governed by its board of county commissioners. No individual commissioner has the power to bind the county. *Hailey v. King County*, 21 Wn. (2d) 53, 149 P. (2d) 823, 154 A. L. R. 351.

RCW 36.40.010 *et seq.* provide for county budgets, preliminary estimates, notice of hearing, hearing, fixing of final budget, etc.

RCW 36.40.100 provides:

"The estimates of expenditures itemized and classified as finally fixed and adopted in detail by the board of county commissioners shall constitute the appropriations for the county for the ensuing fiscal year; and the county commissioners and every other county official shall be limited in the making of expenditures or the incurring of liabilities to the amount of such detailed appropriation items or classes respectively:  . . . "

RCW 36.40.130 provides:

"Expenditures made, liabilities incurred, or warrants issued in excess of any of the detailed budget appropriations or as revised by transfer as herein provided shall not be a liability of the county, but the official making or incurring such expenditure or issuing such warrant shall be liable therefor personally and upon his official bond. The county auditor shall issue no warrant and the county commissioners shall approve no claim for any expenditure in excess of the detailed budget appropriations or as revised under the provisions hereof, except upon an order of a court of competent jurisdiction, or for emergencies as hereinafter provided. Any county commissioner, or county auditor, approving any claim or issuing any warrant in excess of any such budget appropriation except as herein provided shall forfeit to the county fourfold the amount of such claim or warrant which shall be recovered by action against such county commissioner or auditor, or all of them, and the several sureties on their official bonds."

RCW 36.40.140 and 36.40.180 provide for emergency appropriations. No emergency appropriations were adopted by the commissioners in the case at bar.

In *State ex rel. Richardson v. Clark County,* 186 Wash. 79, 56 P. (2d) 1023, the probation officer sought a peremptory writ of mandate requiring the issuance of a warrant for the operation of his automobile at the rate of five cents per mile, in the necessary performance of his services. The commissioners had budgeted six hundred dollars to cover his transportation for the year and this sum had been exhausted. We held:

"The provisions of the budget law to which we have referred make all warrants for expenditures in excess of the budget allowance illegal and specially enjoin the county auditor from issuing any such warrant and the county commissioners from approving any claim in excess of the budget, except in respect of emergency warrants and warrants issued in satisfaction of the order of a court of competent jurisdiction. It was, therefore, not only the right, but the duty, of the auditor to refuse to issue the warrant to relator."

In *State ex rel. Ross v. King County,* 191 Wash. 340, 71 P. (2d) 370, the county clerk's budget was regularly adopted by the county commissioners and a certain sum was appropriated for the year's payment of salaries and wages for forty-six designated positions, the amount for each being separately and specifically stated. Later, without the consent of the commissioners, the clerk employed additional help. Instead of seeking a revision of the budget, or securing an emergency appropriation, in order to come within his budget he arbitrarily set up a salary and wage schedule of his own by reducing the salaries of his permanent employees in order to provide for the extra help. Both the regular and extra employees sought to recover from the county the alleged deficiencies in their salaries. We said:

"Within these provisions and limitations, and up to this point of precept and prohibition of the budget law, the rights of those respondents who had been appointed to their respective positions prior to 1933 and who were thereupon and thereafter retained seem quite clear. They were the

duly appointed, qualified and acting deputies or else the hired employees in the clerk's office. Their positions had been specifically designated in the budget and were continuous. Their salaries had been definitely fixed. They legally held the positions for which the appropriations were made, and, so long as they retained their positions and performed their work, they were entitled to the salaries provided therefor. They were never discharged, nor did they ever resign. No question is raised as to their services or as to the amounts earned. The liability of the county as to them became fixed and binding unless it is obviated by some definite, mandatory provision of the budget law."

We held that the regular employees were entitled to a writ of mandamus to compel the issuance of warrants for the amount of deficiencies in their salaries, but that the extra help, not provided for in the budget, were not entitled to the relief sought.

*May v. Chicago,* 222 Ill. 595, 78 N.E. 912, was an action brought by the plaintiff, employed for many years as a clerk in the city collector's office, for work performed outside of regular hours. Every year, about April 1st, the office was very busy extending special assessments, and it was found necessary for the regular office force to work overtime. Such clerks were promised pay for overtime by the city collector. In denying the relief sought, the Illinois court said:

"Plaintiff was a regular employee of a municipal corporation at a regular salary, and he is bound to perform the duties of his office for the compensation fixed, even though additional duties are imposed upon him by statute or ordinances subsequently to his employment. . . .

"It is contended that the city was bound by the city collector's promise to pay for the extra work. Section 91 of the City and Village act (Hurd's Stat. 1905, p. 308,) provides that no contract shall be made by the city council or any committee or member, and no expense incurred by any of the officers or departments of the corporation, unless an appropriation shall have been previously made. No appropriation having been made for this extra work of the plaintiff, it is impossible by any act of the city officials to create a liability against the city for the work. [Citing cases.] A person dealing with a muncipal corporation is charged with

the knowledge of the limitations of the power of that corporation for any contract attempted to be entered into by any of its officials."

See, also, *Gathemann v. Chicago,* 263 Ill. 292, 104 N. E. 1085.

In *State ex rel. Bonsall v. Case,* 172 Wash. 243, 19 P. (2d) 927, the relator, for more than a year prior to January 11, 1933, had been the duly qualified and acting deputy state auditor. His connection with the office was severed on that date. The date, January 11, 1933, would indicate that his employment was severed because he was a Republican. The day before, January 10, 1933, he prepared a voucher for a period of fourteen days, which was in addition to the regular monthly compensation. During the preceding year he had taken no vacation, and the voucher was intended to cover the vacation period, as provided in Rem. Rev. Stat., § 10891:

"Each subordinate officer and employee of the several offices, departments, and institutions of the state government shall be entitled, during each twelve months' period, to fourteen days' leave of absence with full pay."

In denying the application for a writ of mandate, we said:

"We see nothing in the statute which would authorize the payment, for a vacation period, to one who had been an employee of the state, subsequent to the time that his service ended. The purpose of the statute, as we view it, was to give each employee, during the time that he was in the service of the state, a vacation of fourteen days on pay, but it does not follow from this that the state auditor could issue a warrant covering a vacation period which had not been taken, and, in effect, grant the employee a vacation on pay after he had ceased to be an employee of the state. If this could be done, it would be, in effect, the giving to the employee of a gratuity or bonus in addition to his regular salary which he agreed to accept at the time the employment or service began. . . . It is our conclusion on this branch of the case that, when the relator's service was terminated, his right to a vacation ceased, and he no longer had a right to compensation for a vacation period which he did not take during the time of his employment."

In the case at bar, there was no appropriation for overtime pay for the respondents, in the budget adopted by

the county commissioners. Their employment had terminated prior to the time they sought overtime pay. There was no contract between them and the county, acting through the board of county commissioners, for overtime pay.

We shall now consider whether or not respondents can recover for the reasonable value of their services, under an implied contract. The law imposes upon a person a fictitious promise to pay, from an implied legal duty or obligation, for the reasonable value of services rendered to him, which he has accepted and the benefit of which he is enjoying. This is on the theory of unjust enrichment. *Chandler v. Washington Toll Bridge Authority,* 17 Wn. (2d) 591, 137 P. (2d) 97.

This court has applied the doctrine of implied contract with respect to municipal corporations where the contract has been fully performed and the municipal corporation has accepted and is enjoying the benefits accruing from its performance. *Mallory v. Olympia,* 83 Wash. 499, 145 Pac. 627 (a sewer); *Criswell v. Directors of Everett School Dist. No. 24,* 34 Wash. 420, 75 Pac. 984 (a schoolhouse); *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, 114 Pac. 457 (a bridge); *Besoloff v. Whatcom County,* 133 Wash. 109, 233 Pac. 284 (a road); *Strong & MacDonald v. King County,* 147 Wash. 678, 267 Pac. 436 (a road); *Association Collectors v. King County,* 194 Wash. 25, 76 P. (2d) 998 (merchandise).

However, in each of the above cited cases a contract had been entered into which for some reason or other was unenforcible. In each case, the plaintiff expected to be paid and the municipality expected to pay. In the case at bar, there was no expectation on the part of the respondents that they would be *paid* for their overtime. There was no expectation on the part of the county that it would *pay* respondents for their overtime. It was merely the understanding (with Commissioner Whetstone) that they would get additional time off. Unfortunately, their services were terminated before this could be accomplished. There is no direct testimony as to what precise benefits were rendered to the county by them, which the county had accepted and was enjoying. Admitting that the county may have been

enriched by their overtime work, we cannot say, from all the evidence in this case, that the county was unjustly enriched thereby.

It is not sufficient that the municipality be enriched in order to permit recovery on an implied contract. It must be unjustly enriched. *Chandler v. Washington Toll Bridge Authority, supra.* Our examination has failed to disclose that the doctrine of implied contract has ever been employed to fasten liability on a municipal corporation in a case such as this.

The Kerr judgment is reversed and remanded, with direction to dismiss the action.

The Owen appeal is dismissed on our own motion for the reason that this court does not have jurisdiction to entertain the appeal, the amount in controversy being less than two hundred dollars. Art. IV, § 4, Washington State Constitution; *Dygert v. Hansen,* 31 Wn. (2d) 858, 199 P. (2d) 596; *Baker v. Oliver,* 37 Wn. (2d) 862, 226 P. (2d) 567; *Green v. Nichols,* 40 Wn. (2d) 661, 245 P. (2d) 468.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.