[No. 29261.  Department Two.  June 23, 1944.]

H. D. HAILEY, *Respondent and Cross-appellant*, v. KING COUNTY, *Appellant*, TOM SMITH *et al., Respondents.*[1]

[1]Reported in 149 P. (2d) 823.

*Lloyd Shorett* and *Wm. R. Bell,* for appellant and respondents Smith *et al.*

*Evans, McLaren & Lane* and *George V. Powell,* for respondent and cross-appellant.

*Loren Grinstead* and *Arthur Grunbaum,* for respondent Fidelity & Deposit Company of Maryland.

BLAKE, J.—Plaintiff brought this action to recover the reasonable value of personal services rendered to King county upon the strength of alleged assurances made by individual members of the board of county commissioners that compensation would be made. The individual members of the board, together with the sureties on their official bonds, were joined with King county as parties defendant.

Trial was had after issues joined, which resulted in a judgment for three thousand dollars against King county and dismissal of the other defendants. King county appeals from the judgment against it; and plaintiff cross-appeals from the judgment dismissing the county commissioners and their sureties.

Plaintiff's cause of action against the county is predicated on an implied contract. We do not understand him to contend that the board of county commissioners, acting in its official capacity, ever authorized or ratified the services for which he seeks compensation; in any event, such a contention would be untenable in face of the undisputed facts.

It seems that, for a number of years prior to 1935, plaintiff had been employed in various capacities in the department of labor and industries of the state of Washington. He severed his connection with the department in 1935 and established himself in Seattle as a consultant and adviser to various employers engaged in extrahazardous industry in connection with their problems arising under the industrial insurance act. On March 18, 1935, the then board of county commissioners duly appointed him "to act as Industrial and Medical Aid Agent for King county." His compensation was fixed at sixty dollars a month. It was later raised to one hundred fifty dollars. He was paid at

the latter rate through 1940 upon either a regular or an emergency appropriation for his salary made pursuant to the provisions of the county budget statutes. Rem. Rev. Stat., §§ 3997-1 to 3997-10 [P. C. §§ 1652-1 to 1652-10].

The budget for 1941, however, carried no provision for the payment of his salary. Plaintiff knew that to be the case. Nevertheless he continued for eighteen months to render such services, as he had theretofore rendered, at the request of various employees of the county who were engaged in, or had supervision of, extrahazardous work. It is not contended that any of such persons had any authority to bind the county for payment for such services. He seeks to fasten liability on the county upon conversations he had with the individual commissioners in January, 1941, and at various times thereafter. Typical of these conversations is the following:

"A. Yes, somewhere around that date I talked, in particular, with Commissioner Tom Smith, about the fact the item had not been placed in the budget for 1941. As a matter of fact, I think I talked to him first prior to the end of 1940 but after the budget had been made up. Later in the year, I don't remember the date, I know I talked to Commissioner Fluent, and I talked on one occasion to Mr. Phelps. . . . The conversation with Commissioner Smith, of course, had to do with the omission of the item in the 1941 budget and he told me that while it had been omitted to carry on, that it could be taken care of later. The conversation with Mr. Fluent had to do with the same subject, who, I gathered after I talked with him, was agreeable but thought the matter was one all the commissioners should take up and act on at the same time. . . . The substance was he said it would be checked up and taken care of when all the commissioner[s] acted on it together, that he was agreeable to it. The substance of my conversation with Mr. Phelps, at which time Mr. Jerry Martin was present, was that he would ask Mr. Martin to look into it and let me know what could be done."

It is elementary, of course, that a contract, to be binding upon a municipal corporation, must be executed by the department, board, committee, council, officer, or agent vested by law with power to make it. 3 McQuillin Muni-

cipal Corporations (2d ed.), § 1266. And the authority must be exercised by the proper authorities in their official capacity and in the manner provided by law. 3 McQuillin Municipal Corporations (2d ed.), § 1279; *Paul v. Seattle,* 40 Wash. 294, 82 Pac. 601; *Jones v. Centralia,* 157 Wash. 194, 289 Pac. 3. Likewise, ratification of a contract may be effected only by the officer or body originally empowered to make it. 3 McQuillin Municipal Corporations (2d ed.), § 1360; *Jones v. Centralia, supra; Marsh v. Fulton County,* 10 Wall. (77 U. S.) 676, 19 L. Ed. 1040.

█ In the light of these principles, which are fundamental, it would seem that liability of a municipal corporation could not be predicated upon an implied contract. And there is very substantial authority for so holding. However, the doctrine of implied contract has been applied with respect to municipal corporations under circumstances where "equity and good conscience" have seemed to require it. Dillon, in his work on Municipal Corporations (Vol. II (5th ed.), p. 1184, § 793), says:

"The present state of the authorities clearly justifies the opinion of Chancellor Kent, that corporations may be bound by *implied contracts* within the scope of their powers, to be deduced by inference from authorized corporate acts, without either a vote, or deed, or writing. This doctrine is applicable equally to public and private corporations, but in applying it, however, *care must be taken not to violate other principles of law.*" (Italics ours.)

But the application of the doctrine is confined within definite limitations. Its application presupposes a contract which for some reason is unenforcible; that such contract has been fully performed, and that the municipal corporation has accepted and is enjoying the benefits accruing from its performance. *Mallory v. Olympia,* 75 Wash. 245, 134 Pac. 914; *Mallory v. Olympia,* 83 Wash. 499, 145 Pac. 627. The situation giving rise to those decisions involved the construction of a sewer. In the first the court held that the contractor could not recover on the contract. In the second it held he could nevertheless recover the reasonable value

of the construction in so far as accepted and used by the city.

In so holding the court applied a maxim stated in *Marsh v. Fulton County, supra,* p. 684: "The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the *money or property of others without authority,* the law, independent of any statute, will compel restitution or compensation." In the next sentence, however, the court defined the limitation of the applicability of the principle to municipal corporations: "*But this is a very different thing from enforcing an obligation attempted to be created in one way, when the statute declares that it shall only be created in another and different way.*" (Italics ours.) In other words, a municipal corporation will not be permitted to accept the tangible benefits which accrue to it through the performance of an unenforcible contract without compensating for their reasonable value.

The doctrine of implied contract, within that limitation, has been repeatedly applied by this court. *Criswell v. Directors School Dist. No. 24,* 34 Wash. 420, 75 Pac. 984; *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, 114 Pac. 457; *Besoloff v. Whatcom County,* 133 Wash. 109, 233 Pac. 284; *Strong & MacDonald v. King County,* 147 Wash. 678, 267 Pac. 436; *O'Connor v. Murray,* 152 Wash. 519, 278 Pac. 176; *Association Collectors, Inc. v. King County,* 194 Wash. 25, 76 P. (2d) 998. In final analysis these decisions hold that it would amount to unjust enrichment for a municipal corporation to accept and use an improvement—whether it be a schoolhouse, a sewer, a bridge, a street grade, pavement —or merchandise without paying for it.

No decision of this court has been called to our attention, however, which has invoked the doctrine of implied contract to fasten liability on a municipal corporation for purely personal services; indeed, the applicability of the doctrine in such a case was effectually denied in *Chandler v. Washington Toll Bridge Authority,* 17 Wn. (2d) 591, 137 P. (2d) 97.

To extend the doctrine of implied contract to the situation presented in this case would be to ignore the under-

lying principle, as expressed in *Marsh v. Fulton County*, upon which our previous decisions have rested. To apply it would be not only contrary to the statutes governing counties, but also contrary to public policy, for, as remarked by Judge Rudkin, dissenting in *Green v. Okanogan County*, p. 323:

"Counties can act only through their boards of county commissioners and other public officials, and if a contractor sues a county to recover the reasonable value of services performed or material furnished under a void contract, or if the county sues the contractor to recover any excess paid over such reasonable value, it is presuming entirely too much in favor of weak human nature to assume that the delinquent officials will be overdiligent or overzealous in proving that their unauthorized contract was improvidently or fraudulently entered into. The only safe rule to adopt, and the only rule that will at all safeguard the public interest, is the rule which prohibits a recovery in such cases on the contract or otherwise, and I am convinced that this rule is supported by the better reason and by the weight of authority."

We think that plaintiff's attempt to hold the individual commissioners and their bondsmen liable is without foundation. The contract, if any, was for the benefit of King county—not the individual commissioners. There is no charge of fraudulent conduct on their part. The plaintiff was chargeable with knowledge of their power to contract and the manner in which they might exercise it. It is well established that municipal authorities are not personally liable, in the absence of fraud, for acts purportedly done in behalf of the municipality. 2 McQuillin, Municipal Corporations (2d ed.), § 560. But, aside from that, we do not think plaintiff sustained the burden of proving that the commissioners did or said anything that would justify him in expecting compensation for services rendered subsequent to January 1, 1941. They categorically denied what he claimed they said. The fact that no provision was made in the budget for 1941 supports their version of what was said, or rather what was not said.

The judgment is affirmed on plaintiff's appeal. It is reversed on the county's appeal; and the cause is remanded with direction to dismiss the action.

SIMPSON, C. J., MILLARD, ROBINSON, and MALLERY, JJ., concur.