[No. 40456.    En Banc.    January 8, 1970.]

THE STATE OF WASHINGTON, *on the Relation of Walter Bain et al., Appellant,* v. THE CLALLAM COUNTY BOARD OF COUNTY COMMISSIONERS *et al., Respondents.**

*Reported in 463 P.2d 617.

*Edward Heavey,* for appellant.

*Nathan G. Richardson,* for respondents.

HALE, J.—Relators seek a mandate compelling the Clallam County Commissioners to adopt and perform an asserted oral collective bargaining agreement. They appeal a judgment of the superior court denying the writ.

Relators, Port Angeles City Employees, Local 1619, a labor organization, and Walter Bain, its vice-president, applied to the superior court for a writ of mandamus against the Board of County Commissioners of Clallam County and its component members. The application asked the court to order the commissioners to grant members of relator union a pay increase for the calendar year 1968. Relators say that respondents, in a collective bargaining agreement, had orally agreed to grant the pay increase and that there existed no valid grounds for failing to carry out the agreement. The facts, law and record on appeal, in our opinion, how-

ever, present several reasons why the superior court must be affirmed in denying the writ.

The trial court made a finding that the "plaintiff and defendants orally entered into a tentative agreement relative to certain increases in salaries . . . and to certain . . . medical payments to employees of Clallam County." It found that the increases would preempt and require a transfer of funds regularly appropriated in the 1968 Clallam County budget for part-time help in the various county offices. No finding was made as to which employees were to receive the increases, nor were details of the asserted oral tentative agreement set forth in the findings of fact. Relators now ask us to order the superior court to direct the Commissioners of Clallam County to legislatively adopt a resolution which will make a contract of the tentative oral agreement and perform it.

■ Findings of fact either made or refused do not constitute a basis for reversible error unless set forth verbatim in the briefs on appeal as specified in Rule on Appeal 43, RCW vol. 0. *Caffrey v. Cham-ionics Corp.,* 69 Wn.2d 641, 419 P.2d 809 (1966). Verbatim means verbatim, word for word. Unless set forth verbatim, the given findings will be treated as verities for the purpose of the case and the refused findings disregarded on review ROA 43; *State v. Moses,* 70 Wn.2d 282, 422 P.2d 775 (1967); *Paulson v. Higgins,* 43 Wn.2d 81, 260 P.2d 318, 266 P.2d 800 (1953-54); *Hill v. Tacoma,* 40 Wn.2d 718, 246 P.2d 458 (1952).

Relators' sole claim of error directed to the court's finding of an agreement claims no error other than the general assertion that the plaintiffs and defendants had orally entered into a tentative agreement. Although the statement of facts indicates that relators proposed a finding which purported to delineate in greater detail the asserted oral agreement, no error was properly assigned on appeal to the court's refusal to adopt this proposed finding. Neither the challenged finding nor the proposed finding was set forth in the briefs. There being ample evidence to support the findings, this court must regard as ultimate facts those set forth

in the findings entered by the court. ROA 43. Accordingly, for the purposes of this case, it is a fact that the plaintiffs and defendants did no more than orally enter into a tentative agreement. Whatever the arrangement may have been, it was both oral and tentative.

The commissioners gave as one reason for declining to perform the tentative oral agreement that their official counsel, the Prosecuting Attorney of Clallam County, had advised them that it would be illegal to grant the pay increase because no emergency existed warranting a departure from the 1968 budget. We are not concerned with and do not pass on whether this court would ultimately sustain the prosecuting attorney's position, but rather whether the commissioners had a legal right to heed his advice.

The record and the findings support the commissioners on this point. It was made clear to relators that performance of the tentative oral agreement would depend on the prosecuting attorney's advice as to its legality. When the commissioners presented the agreement to the prosecuting attorney for his opinion, he advised them on several occasions that it "was not in conformity with the laws governing budgets for Counties."

There is no question that the prosecuting attorney acted in good faith. He held the opinion that the funds for the pay increases could not be legally transferred from funds for part-time help except in a genuine emergency. He advised the commissioners that, under the controlling statutes, the 1968 budget had been finally adopted; that it was the official budget as required by law for operating the county government during 1968; and that no emergency existed. The county commissioners, therefore, he advised, could not legally preempt the regularly budgeted funds from the part-time employees' appropriation during 1968 and transfer them to other employees for the purpose of increasing the pay and medical allowances of other employees. The trial court was of the same opinion, concluding as a matter of law that, after final adoption of the 1968 Clallam County budget, no emergency existed which would warrant re-

opening the budget for the purpose of granting salary increases and additional medical benefits for that year, and holding that the commissioners had not acted arbitrarily and capriciously.

■ We do not reach the question of whether an emergency, actual or impending, existed which would empower the county to allocate budgeted funds appropriated for part-time employees to salary increases for other employees during the calendar year 1968. Regardless of the answer to that problem, the board was entitled to accept in good faith the advice given in good faith by its lawfully constituted legal adviser. The findings show that whatever agreement was reached would depend upon the prosecuting attorney's opinion as to its legality. We therefore concur in the court's conclusion that, in heeding the advice of the prosecuting attorney, the defendant commissioners had not abused their discretion nor acted in any manner arbitrarily or capriciously. RCW 36.40.140.

■ The decree should be affirmed for other reasons, too. In their application for a writ of mandamus, the relators are seeking what amounts to a decree of specific performance. This inevitably raises the question of whether the agreement is sufficiently definite and specific to be susceptible of such a remedy. The findings describe the agreement merely as a "tentative agreement relative to certain increases in salaries . . . and . . . in medical payments to employees of Clallam County." Amounts of and the identities of the employees who would receive the increases are not in the findings nor set forth in the briefs in any proposed finding on which error is claimed. Thus, the agreement sought to be enforced was not only tentative but its terms and conditions vague, indefinite and uncertain. Aside from the obtrusive question of whether mandamus will lie against public officials to compel the performance of a discretionary rather than a ministerial function, we hold that the tentative agreement shown in this record is too vague and indefinite and uncertain to be susceptible of a decree enforcing its terms. A contract is not subject to specific performance unless the precise acts sought to be com-

pelled are clearly ascertainable. 49 Am. Jur. *Specific Performance* § 22 (1943); *Hubbell v. Ward*, 40 Wn.2d 779, 246 P.2d 468 (1952). "The terms must be so clear that the court can determine what the contract is and be able to require that the specific thing agreed to be done shall be done." 81 C.J.S. *Specific Performance* § 31 (1953); *Lager v. Berggren*, 187 Wash. 462, 60 P.2d 99 (1936).

██ Finally, we think the oral tentative agreement is not subject to enforcement by mandamus or similar writ because it never achieved the status of a collective bargaining agreement. The statute which authorizes counties of the state to enter into collective bargaining agreements requires that the agreements be in writing:

> "Collective bargaining" means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter.

RCW 41.56.030(4).

The foregoing section uses language designed to show a legislative intention that there be no oral collective bargaining agreements. It means that until reduced to writing and executed by the bargaining parties, an agreement does not, under the statute, become a collective bargaining agreement. Any understanding arrived at in collective bargaining negotiations necessarily, therefore, remains preliminary, or, as the court found here, merely tentative until merged into a written agreement. Obviously, the legislature in authorizing and in empowering county commissioners to enter into *written* agreements did so to avoid the very thing that happened here: conducting county business privately—as in the Elks' Club—from which the public could be excluded, possibly binding the county and its

treasury to contractual obligations established only by parol evidence, and leaving the county dependent on the memory and recollection of the negotiators.

■ The county is a political subdivision of the state and its power is limited strictly to that granted by the state legislature. *State ex rel. King County v. Superior Court,* 33 Wn.2d 76, 204 P.2d 514 (1949). Especially is this rule to be enforced where the public treasury will be directly affected. *State ex rel. Thurston County v. Department of Labor & Indus.,* 167 Wash. 629, 9 P.2d 1085 (1932). Within its sphere of responsibility, the board of county commissioners exercises the county's legislative power along with certain executive and, to a very limited degree, perhaps some judicial authority.

■■ Although the board may conduct negotiations in closed meetings and may for purposes other than the final adoption of any ordinance, resolution, rule, regulation, order or directive (RCW 42.32.020), hold executive session, the converse of the same proposition is equally true. In all official actions of the board, such as the enactment of resolutions or ordinances adopting proposed contracts or salary schedules:

> No board, commission, agency or authority of the state of Washington, nor the governing board, commission, agency or authority of any political subdivision exercising legislative, regulatory or directive powers, shall adopt any ordinance, resolution, rule, regulation, order or directive, except in a meeting open to the public and then only at a meeting, the date of which is fixed by law or rule, or at a meeting of which public notice has been given by notifying press, radio and television in the county and by such other means as may now or hereafter be provided by law . . .

RCW 42.32.010. In *Stoddard v. King County,* 22 Wn.2d 868, 158 P.2d 78 (1945), we said, at 882, that

> our statutes contemplate that a board of county commissioners can act authoritatively only by resolutions properly spread upon the minutes and joined in by a majority of the board.

In the instant case, there was neither a public official meeting nor a resolution adopted at one. Relators thus came within the rule that anyone contracting with a municipal corporation is bound to take notice of the limitations in its power to contract. 10 E. McQuillin, The Law of Municipal Corporations § 29.04 at 219 (3d ed., 1966 rev.). When dealing with an officer or officers of a municipal corporation, one must be presumed to have knowledge of the official's power and authority, and when one deals with them in a manner not in compliance with the law one does so at one's peril. *Paul v. Seattle*, 40 Wash. 294, 82 P. 601 (1905); *Stoddard v. King County, supra.*

Relators knew, or should have known, that negotiations conducted at the Port Angeles Elks' Club could not at that time and place culminate in an agreement or contract binding upon the sovereign state or its political subdivision. Until they had, as the collective bargaining statute declares, entered into a written agreement, adopted by the county at an open public meeting of the board of commissioners at a time fixed either by law or upon notice, the commissioners could not convert a tentative agreement into a contract binding upon the county and its treasury.

Additionally, since the statute under which relators sought to bargain collectively authorized the county to enter into *written* contracts of collective bargaining, the relators were charged with knowing that the commission could not bind the county to an oral agreement. Until their oral, tentative agreement had been reduced to writing and properly executed in the manner prescribed by law for the execution of collective bargaining contracts, they had no collective bargaining agreement at all. What came out of the privately negotiated conference at the Elks' Club amounted in law to no more than preliminary negotiations.

Nor does the general law afford relators any relief on the basis that the parties had reached if not a written at least an implied contract, for the law does not support liability by implication against a county for personal services. In *Hailey v. King County*, 21 Wn.2d 53, 57, 149 P.2d 823, 154 A.L.R. 351 (1944), we said that no authority had

been found which invoked the doctrine of implied contract to

> fasten liability on a municipal corporation for purely personal services; indeed, the applicability of the doctrine in such a case was effectually denied in *Chandler v. Washington Toll Bridge Authority,* 17 Wn. (2d) 591 137 P. (2d) 97.

*Accord: Stoddard v. King County, supra.* In *Edwards v. Renton,* 67 Wn.2d 598, 409 P.2d 153 (1965), a case not involving personal services to the county but rather the furnishing of materials for and construction of an electric traffic signal, a contractor had built a complicated signal system on the written assurances contained in a resolution of the Renton City Council that the $18,200 cost would be provided for in the city budget for the following year. This court held that assurances of payment set forth in the resolution did not create a contract even though the resolution was in writing.

The trial court should be and it is affirmed.

HUNTER, C. J., FINLEY, WEAVER, ROSELLINI, HAMILTON, NEILL, and McGOVERN, JJ., concur.