[No. 49-40448-3.　　Division Three.　　April 3, 1970.]

LLOYD SANBORN et al., Respondents, v. BRUNSWICK COR-PORATION, INC., Appellant.

*Milne & Peterson* and *K. D. Peterson,* for appellant.

*Hormel & Whitford* and *C. E. Hormel,* for respondents.

EVANS, C. J.—Defendant, Brunswick Corporation, appeals

from a judgment for plaintiffs Lloyd Sanborn and Meta Sanborn, husband and wife, mortgagees, in a suit brought for conversion of bowling equipment secured by plaintiffs' mortgage.

The findings entered by the trial court, to which no assignments of error are directed except as to the italicized portions, are as follows:

### III

That Eugene V. Borg operated a bowling alley, commonly known as Warden Lanes in Warden, Washington. At the time Borg came to Warden he brought with him certain bowling equipment and miscellaneous equipment of Brunswick make to be used in the operatiion of the bowling alley. In addition to the equipment which he brought with him, he secured substantial quantities of bowling equipment by entering into a contract and chattel mortgage with Brunswick Corporation. *Eugene V. Borg had in August, 1962, executed a note and chattel mortgage to the plaintiffs, herein, Lloyd Sanborn and Meta Sanborn, in the amount of $3,000.00 and that said note was executed in the County of Snohomish;* that subsequently on the 6th day of September, 1963, Eugene V. Borg executed a chattel mortgage to the Brunswick Corporation for certain items of bowling equipment sold to him by Brunswick and that said mortgage was filed on the 10th day of September, 1962, in the amount of $120,320.00; that no part of the equipment upon which the Sanborns held a mortgage was pledged in any way to the Brunswick Corporation.

### IV

That on December 27, 1963, Borg renewed his obligation to the plaintiffs by signing a note in the amount of $3,000.00, and as security he executed a chattel mortgage to the plaintiffs herein on the equipment owned by him prior to his transaction with Brunswick resulting in the mortgage to that firm of September 6, 1962, which mortgage to the plaintiffs was filed January 3, 1964.

### ·V

*That Borg made no payments on the mortgage to plaintiffs but did keep the interest current until he abandoned the bowling alley sometime in the early spring of 1965.*

## VI

That during April or May, 1965, a representative of the Brunswick Corporation was in the area and made contact with Milton W. Muller with a view towards selling the equipment in the bowling alley to Mr. Muller. Mr. Muller was interested in the purchase of the bowling alley but he was aware of the mortgage existing between Borg and the plaintiffs herein in the amount of $3,000.00 covering the property owned by Borg, and he advised the Brunswick representative that he would not make a deal unless Brunswick would take care of the Sanborn mortgage and all other encumbrances; subsequently Mr. Muller signed the order. The order was returned for the signature of Mrs. Muller; was signed by her and returned to Brunswick. This order in reality contained a provision for forfeiture, all the terms of the sale, and all the various things which constitute in actuality a conditional sales contract. This order described all of the property included in the September, 1962, mortgage from Borg to Brunswick, and in addition, it included some of the items that were covered by the mortgage from Borg to Sanborn. It also covered all other "bowling supplies and merchandise". This was an "on the site" sale and the bowling equipment specifically covered by the Brunswick mortgage was not adequate, without some or all of the equipment mortgaged to Sanborn, to enable a regular bowling alley operation to be carried on. Mr. Muller made a down payment of some $5,000.00 and about $1.500.00 additional as a monthly payment. The Brunswick Corporation entered into the contract represented by the order, which included some of the property mortgaged to Sanborns by specific description and the balance by inclusion of the same as "all other bowling supplies and merchandise", and accepted the benefits therefrom. They were thereby exercising dominion over the property mortgaged to Sanborn. This dominion, either through themselves or through their contract purchaser Muller, continued for a period of eleven months.

## VII

In about March or April of 1966, Mr. Muller abandoned the enterprise and left it all at its original location in Warden. Thereafter Brunswick's representatives came in and moved out the exact equipment covered by their original mortgage of September, 1962, from Borg. There

is no showing that they had Borg's permission to take possession of the mortgaged property, either at this time, or when they sold it to Muller in the spring of 1965.

## VIII

*Early in the spring of 1965, the plaintiffs, upon hearing that Borg had abandoned the property, came to Warden* for the purpose of seeking advice as to what proceedure they should follow to protect their interest in the property set forth in the Sanborn-Borg mortgage. Upon arrival, they found Mr. Muller operating the bowling alley and exercising dominion over the property. At this time Muller learned that Brunswick had not contacted the plaintiffs and had not paid off the Sanborn-Borg mortgage. The plaintiffs later contacted the Brunswick Corporation in an effort to obtain some satisfaction with regard to their $3,000.00 mortgage. The defendant, Brunswick Corporation, through its representatives, refused to discuss the matter with the plaintiffs, Lloyd Sanborn and Meta Sanborn.

## IX

That the defendant through the manner of its dealings with Muller caused Muller to believe, and caused the plaintiff to believe through a conversation with Muller, that Brunswick would take care of the obligations to the plaintiffs and plaintiffs delayed taking action on that account; that said circumstances, together with the depreciation in the equipment during the time it was used by Muller and the further fact that Brunswick, without any notice to plaintiffs, moved all of the equipment covered by their mortgage from Borg, leaving only the isolated equipment covered by the mortgage to plaintiffs, resulted in a major depreciation in value of plaintiffs security, leaving it worth far less than the amount due on plaintiff's mortgage.

## X

*That at the time Mr. Muller signed the contract (order) and took possession of the property, including that covered by the Sanborn mortgage, the reasonable value of said property was $3,000.00.*

## XI

That no part of the equipment contained in the Sanborn-Borg mortgage was ever pledged to the Brunswick Corporation.

Appellant first assigns as error the failure of the trial court to grant its motion to dismiss at the end of respondents' case in chief, upon the ground that a mortgagee without a right to immediate possession cannot maintain an action for conversion.

In considering this assignment of error we must accept as verities the findings of fact of the trial court above set forth, to which the appellant has made no assignment of error. *Union Bank v. Kruger,* 1 Wn. App. 622, 463 P.2d 273 (1969); *Weiss v. Weiss,* 75 Wn.2d 596, 452 P.2d 748 (1969); *State ex rel. Bain v. Clallam County Bd. of County Commis.,* 77 W.D.2d 549, 551, 463 P.2d 617 (1970).

It is appellant's contention that if a chattel mortgagee can reach the mortgaged chattels by foreclosure, he is limited to bringing an action for impairment of security (citing *Muscatel v. Storey,* 56 Wn.2d 635, 354 P.2d 931 (1960)). There, the mortgagee of hotel furnishings brought an action for conversion against the lessors of the hotel after the lessee-mortgagors abandoned the premises. The court held that a refusal to surrender the mortgaged property to the mortgagee upon demand was insufficient to constitute a conversion, since the terms of the mortgage required the mortgagee to resort to one of the statutory realization methods to obtain possession.

Respondents, in turn, rely on *Loudon v. Cooper,* 3 Wn.2d 229, 100 P.2d 42 (1940), where the court held that one who purchased apples subject to a chattel mortgage in favor of the defendant, and resold the crop with knowledge they were subject to a mortgage, converted the apples by putting them out of reach of the mortgagee, stating, at page 237:

> We think it also the rule in this state that, where a third party converts property covered by a chattel mortgage, properly executed and filed, the mortgagee may sue such converter and recover the value of the property as of the time of conversion, up to the amount of the mortgage. *Brotton v. Langert,* 1 Wash. 227, 23 Pac. 803; *German-American State Bank v. Seattle Grain Co.,* 89 Wash. 376, 154 Pac. 443; *Bollen v. Wilson Creek Union Grain Co.,* 90 Wash. 400, 156 Pac. 404; *John Smith Co. v. Hardin,*

133 Wash. 194, 233 Pac. 628; *Union State Bank v. Warner*, 140 Wash. 220, 248 Pac. 394; *Cashmere Valley Bank v. Pacific Fruit & Produce Co.*, 198 Wash. 363, 88 P.(2d)579. We are of the opinion that the last cited case is especially applicable herein, as to the time when the conversion took place, which the cited case held to be at the time the apples were sold and placed beyond the reach of the mortgagee.

We hold that the ruling in *Loudon v. Cooper, supra,* is controlling in the present factual situation, and that *Muscatel v. Storey, supra,* is distinguishable. In *Muscatel,* the alleged converter rightfully regained possession of the hotel in which the mortgaged chattels were located. In the present case, Brunswick came onto the property of a third person, exercised a nonjudicial repossession of chattels which it knew were subject to the mortgage of plaintiff, and attempted an outright sale of that property without the authority or right to do so.

Both Muller and Brunswick knew that neither had title to the mortgaged property nor right to possession. It was only upon Brunswick's representation to Muller that Brunswick would "take care of" the Sanborn mortgage and all other encumbrances, that Muller agreed to complete the transaction. On these representations Brunswick obtained from Muller a $5,000 downpayment and a $1,500 monthly payment. The trial court correctly held that Brunswick's actions in exercising dominion over property to which it had no title or right to possession amounted to a conversion, and that representations made by Brunswick to Muller caused plaintiffs to delay bringing an action to reach the property by one of the statutory methods.

Appellant assigns error to the refusal of the court to accept its proposed findings of fact to the effect that the purchase order did not amount to a contract to sell. These proposed findings are based upon language in the purchase order between Brunswick and Muller to the effect that the purchase order would not be binding on the seller until it had been accepted in writing by a duly authorized officer of the seller at its office in Chicago, Illinois. It is appellant's

contention that since there was no formal acceptance of the offer there was no contract to sell. We find no merit to this assignment of error for two reasons: first, appellant makes no assignment of error to finding of fact No. 6, *supra*, wherein the court found that in entering into the contract represented by the order, Brunswick accepted the benefits therefrom and thereby exercised dominion over the property mortgaged to Sanborn; second, defendant's acts are sufficient to constitute a conversion without recourse to the purchase order. The gist of this conversion action turns on whether Brunswick or someone acting on its behalf took actual or constructive possession. *Martin v. Sikes*, 38 Wn.2d 274, 229 P.2d 546 (1951).

Appellant next assigns error to the court's refusal to accept its proposed findings of fact and conclusions of law, finding in effect appellant did not put the property beyond the reach of plaintiffs, and plaintiffs rested upon their rights by failing to realize upon their security interest. These proposed findings and conclusions are in conflict with the findings made by the trial court to which no assignment of error has been made, and are, therefore, not properly before the court. *Union Bank v. Kruger, supra.*

Defendant next assigns as error acceptance of oral testimony of Milton Muller to the effect that Brunswick agreed to satisfy the obligation owed by Eugene Borg to Sanborn. The contention is that the court permitted oral testimony to establish an agreement to answer for the debt of a third person, in violation of the statute of frauds. This contention disregards the finding made by the trial court, to which no assignment of error is made, that Brunswick, knowing it had no interest in the mortgaged property, made representations to Muller and exercised such dominion and control over the property as to cause Muller to believe that Brunswick did, in fact, have a right to sell the property. The claim of plaintiffs that the defendant converted their property is not predicated upon the theory there was a binding contract between Muller and Brunswick. It is predicated upon an unlawful exercise of dominion and control over

the property. We find no merit to this assignment of error, nor do we find merit in appellant's assignment of error directed to the italicized portion of finding of fact No. 3, *supra,* which refers to a prior unrecorded mortgage between Borg and Sanborn. This finding merely recites background history, and the unrecorded mortgage referred to in finding of fact No. 3 had no bearing upon the judgment which was entered.

Appellant's next assignment of error is directed to the italicized portion of finding of fact No. 5, *supra,* and finding of fact No. 8, *supra,* referring to the early spring of 1965 as the time when Borg abandoned the property. It is appellant's contention that the Sanborns first learned that Borg had abandoned the property in the spring of 1964, when Mrs. Sanborn made a trip to Warden and found the bowling alley closed. A review of the record indicates that Mrs. Sanborn did make a visit to Warden, at which time she found the bowling alley closed, but her testimony is confusing and conflicting as to precisely when this visit occurred. The evidence is clear, however, that she did return to Warden in 1965, at which time she learned not only that the bowling alley was closed but that Borg had abandoned the operation. However, the material question is not when Borg abandoned the property. Abandonment by Borg did not vest Brunswick with any rights in the property. The basic question remains whether Brunswick exercised such dominion and control over the property as to amount to a conversion.

Appellant's final assignment of error is directed to the court's finding of fact No. 10, *supra,* determining that the reasonable value of the property at the time of conversion was $3,000. This assignment of error is based upon the contention that plaintiffs failed to prove the value of each item of property at the time of conversion. Both the plaintiffs and Mr. Muller testified that the value of the property subject to plaintiffs' mortgage was in excess of $3,000, the amount of the mortgage. Mr. Muller also testified the property at the time he ceased operation of the bowling alley

256

was so depreciated as to be virtually valueless. Under these circumstances there is no requirement that the plaintiffs prove the value of each specific item of property at the time of its conversion. There is substantial evidence to support the court's determination that the reasonable value of the property converted was $3,000 at the time of conversion and this court will not disturb that finding. *Stone Machinery Co. v. Kessler,* 1 Wn. App. 750, 758, 463 P.2d 651 (1970).

Judgment is affirmed.

GREEN and MUNSON, JJ., concur.